UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BENJAMIN OGBURN,<br><br>     Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>     Defendant. | No. 12-cv-3107-JPH<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DENYING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

   BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 24, 26.) Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Nicole Jabaily represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

## JURISDICTION

   Plaintiff Benjamin Ogburn (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on April 23, 2008. (Tr. 19, 135.) Plaintiff alleged an onset date of April 23, 2008. (Tr. 111, 135.) Benefits were denied initially and on reconsideration. (Tr. 69, 77, 80.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Moira Ausems on December 2, 2010. (Tr. 35-64.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 42-56.) Vocational expert Scott Whitmer also testified. (Tr. 57-63.) The ALJ denied benefits (Tr. 19-28) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

   The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 53 years old at the time of the hearing. (Tr. 60.) He dropped out of school in the eighth grade. (Tr. 42.) He has work experience in a variety of jobs such as stacking fruit boxes, sprinkler installer laborer, fabricator molder assembler, heating and air conditioning installer helper, maintenance mechanic helper, pipe layer, construction worker, office furniture and cubicle installer, tire service and repair, fast food worker, and sign installer helper. (Tr. 58.) Plaintiff testified he has had around 100 different jobs which have generally ended because he is not able to stay on task, concentrate, and or function the way employers want him to function. (Tr. 50-51.) He has been told he is not fast enough at work. (Tr. 54.) Because he is not able to keep a job, he is not able to support his family and he feels worthless. (Tr. 51.) He has a problem with depression. (Tr. 51.) He sleeps a lot, does not like to be around a lot of people, and gets nervous. (Tr. 52.) He testified alcohol makes him happy and he drinks six to ten beers once or twice a week. (Tr. 53.) He takes care of a two-year old and a five-month old while his girlfriend is at work. (Tr. 56.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since April 23, 2008, the alleged onset date. (Tr. 21.) At step two, the ALJ found plaintiff has the following severe impairments: attention deficit hyperactivity disorder; dysthymia; borderline intellectual functioning; personality disorder; and alcohol dependence. (Tr. 21.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 22.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform a full range of work at
> all exertional levels but with the following nonexertional limitations: the claimant
> can perform work at any exertional level that does not involve performance of
> more than lower semi-skilled, SVP 3, tasks or tasks that depend on the ability to
> read and understand written instructions or that involve more than superficial
> contact with the general public.

(Tr. 24.) At step four, the ALJ found plaintiff is capable of performing past relevant work. (Tr. 27.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from April 23, 2008, through the date of the decision. (Tr. 27.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) did not include in the RFC all limitations established by evidence credited by the ALJ; (2) overlooked evidence supporting the need for a job coach and sheltered employment; and (3) erred in making the credibility finding; and (4) erred by failing to find plaintiff meets a listing. (ECF No. 24 at 14-24.) Defendant argues: (1) the ALJ properly evaluated and weighed the medical evidence; (2) the ALJ properly determined plaintiff does not meet a listing; (3) the ALJ properly found plaintiff less than credible; (4) the ALJ properly assessed plaintiff's residual functional capacity; (5) plaintiff did not show he only has capacity to work in a sheltered environment; (5) the hypothetical to the vocational expert was based on substantial evidence; and (6) the ALJ properly found plaintiff could perform past relevant work. (ECF No. 26 at 4-19.)

## DISCUSSION

### 1. Credibility

Plaintiff argues the ALJ erred by finding plaintiff only partially credible. (ECF No. 24 at 18-23.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to

cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ listed several reasons for finding plaintiff not credible to the extent his complaints are inconsistent with the RFC finding. (Tr. 24-25.) First, the ALJ found plaintiff's subjective complaints are not reasonably consistent with the medical evidence. (Tr. 24.) While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). With respect to plaintiff's depression, the ALJ pointed out that a mental status exam by plaintiff's treating provider in November 2006 showed good thought processes. (Tr. 24, 346.) However, the ALJ failed to note Dr. Maiocco observed plaintiff had a depressed affect, off and on eye contact, and plaintiff reported losing his concentration along with increased depression. (Tr. 346.) The ALJ also cited plaintiff's counselor who said plaintiff was "doing great in his treatment process" (Tr. 378) and noted treatment records indicate that plaintiff was progressing satisfactorily. (Tr. 24, 374-80, 394-405.) However, as plaintiff points

out, these notes referenced plaintiff's progress in alcohol treatment (ECF no. 24 at 22-23) and do not address the symptoms plaintiff alleges keep him from competitive work. Regarding plaintiff's ADHD, the ALJ observed plaintiff's treating physician stated plaintiff appeared well, was cooperative, pleasant and answered questions appropriately. (Tr. 25, 413,418.) The ALJ did not explain how this is inconsistent with plaintiff's allegations regarding his inability to concentrate and complete tasks in a timely manner. The only evidence cited by the ALJ which could reasonably be construed as inconsistent with plaintiff's claims is that plaintiff took part in psychological testing with good attention and without being distracted despite claims of disabling ADHD symptoms. (Tr. 24, 386, 427.) However, the ALJ again selectively cited the evidence because Ms. Bishop modified her report that plaintiff did not appear to be distracted with the phrase "in a quiet one-on-one setting," a setting which may not be consistent with competitive work given other limitations established in the record. Additionally, Ms. Bishop noted plaintiff functioned at a significantly lower level of attention when compared to that of his peers. (Tr. 386.) She also concluded that while plaintiff demonstrated persistence and concentration, he may have difficulty with new tasks and heavily relies upon assistance from others to complete work. (Tr. 390.) The ALJ's conclusions regarding evidence supposedly inconsistent with plaintiff's allegations are not well-supported by the record. Thus, this is not a clear and convincing reason justifying the negative credibility finding.

The second reason given by the ALJ for the negative credibility finding is possible lack of motivation. (Tr. 25.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ points to a 1997 psychoeducational assessment and suggests that plaintiff is not motivated to succeed. (Tr. 25, 434-35.) However, the 1997 report does not indicate plaintiff put forth poor effort during the psychoeducational exam; instead, the report states, "Ben appeared not to be pleased with being tested. His main concern was the amount of time testing would take. However, after becoming engaged in the process, he made a good effort to perform well." (Tr. 433.) The author cautioned that test results from the first part of the exam may not be a reasonable indication of functioning due to plaintiff's initial lack of interest in performing, although the later exam results might reflect plaintiff's functioning "given optimal conditions." (Tr. 434.) This does not indicate, as the ALJ suggests, that plaintiff's poor results were due to a lack of motivation. Furthermore, plaintiff was 16 years old at the time of the testing. If he put

forth poor effort or even actively sabotaged his efforts on the 1997 test, it is not reasonable for the ALJ to conclude that plaintiff's current complaints are tainted by a lack of motivation more than 10 years after that testing. The evidence cited by the ALJ does not reasonably support the conclusion that plaintiff is not credible because of a lack of motivation.

Another reason mentioned by the ALJ in rejecting plaintiff's testimony is that plaintiff has worked with the allegedly disabling impairments. (Tr. 25.) The record is clear that plaintiff has been able to obtain many jobs over the years (Tr. 50, 424.), but less clear about his ability to perform and maintain those jobs in a sustainable manner. The ALJ found it significant that plaintiff reported to Dr. Dougherty that his last job at a sprinkler company ended because they ran out of work. (Tr. 25, 424.) However, plaintiff testified the sprinkler job was a seasonal position, which is by nature a short-term position. (Tr. 48.) Plaintiff also testified about working at other jobs after the sprinkler job. (Tr. 49.) He was fired from a job for nonperformance and was never called back after another seasonal work position ended.[1] (Tr. 49.) The ALJ found none of the jobs plaintiff had since the alleged onset date rose to the level of substantial gainful activity. (Tr. 21.) "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, failed, that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007.) This is therefore not a clear and convincing reason supported by substantial evidence which justifies rejecting plaintiff's testimony.

The last reason cited by the ALJ for finding plaintiff less than fully credible is that plaintiff can perform a full range of daily activities which is inconsistent with the nature and severity of plaintiff's subjective complaints. (Tr. 25.) If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling symptoms. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ cited plaintiff's admitted ability to get ready for work, prepare simple meals, watch television, play with and care for his children. (Tr. 25, 171-72.) Plaintiff has "no problem" with his personal care and goes outside daily. (Tr. 25, 172, 174.) He also reported shopping for groceries once a

---

[1] Dr. Dougherty's report is dated October 14, 2008 but plaintiff also worked in 2009 and 2010. (Tr. 49, 127.)

week and attending medical appointments. (Tr. 25, 174.) In some cases, these activities may be inconsistent with a claimant's complaints of disabling symptoms. However, in this case, the ALJ failed to explain how the daily activities mentioned by plaintiff are inconsistent with his reported limitations on the ability to concentrate, complete tasks in a timely manner, stay on task, and function like other workers at a particular job. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.* The activities mentioned by the ALJ seem to be activities which a person with plaintiff's claimed limitations would be able to do at his own pace. Furthermore, the ALJ failed to note that plaintiff reported he is "able to do all chores that I need to do just takes me a long time" and "I have trouble starting and finishing chores." (Tr. 173.) This suggests plaintiff's ability to complete certain daily activities may not be transferrable to a work setting. Therefore, this is not a clear and convincing reason justifying rejection of plaintiff's testimony.

The ALJ failed to supply a clear and convincing reason supported by substantial evidence to justify the negative credibility finding. The ALJ's reasons are not well-supported by reasonable interpretations of the evidence and do not take into account the effect of plaintiff's claimed limitations. In finding the ALJ's reasons are not adequately supported, the court expresses no opinion as to plaintiff's credibility. However, evidence cited by the ALJ does not reasonably support that plaintiff is not credible and the ALJ therefore erred.

## 2. RFC and Hypothetical

Plaintiff argues the ALJ erred by failing to include in the RFC all of the limitations noted in a medical opinion credited by the ALJ. (ECF No. 24 at 14-16.) A claimant's "residual functional capacity" is what a claimant can still do despite his limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996); 20 C.F.R. § 404.1545(a) (1991). Plaintiff asserts the ALJ credited the opinion of Dr. Mee, a state reviewing psychologist, but failed to include all of the limitations identified by Dr. Mee when formulating the RFC. (ECF No. 24 at 14-16.) According to plaintiff, the vocational expert testified that with those limitations, a person could not hold a job for more than two or three months. (ECF No. 24 at 16.)

Dr. Mee completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form in October 2008. (Tr. 348-65.) Dr. Mee's opinion was affirmed by Dr. Bailey in July 2009. (Tr. 373.) Dr. Mee indicated there is some evidence of ADHD, dysthymia, borderline IQ, antisocial and dependent personality traits, and alcohol

dependence in the record. (Tr. 349-55.) Dr. Mee assessed eight moderate limitations on the MRFCA form and made a narrative functional capacity assessment. (Tr. 362-64.) The ALJ gave significant weight to the opinions of Dr. Mee and Dr. Bailey. (Tr. 27.) He noted Dr. Mee found plaintiff is capable of simple tasks with superficial contact with the general public. (Tr. 27, 364.) The ALJ translated Dr. Mee's opinion, along with other evidence in the record, into the RFC finding which states plaintiff "can perform work at any exertional level that does not involve performance of more than lower semi-skilled, SVP 3, tasks or tasks that depend on the ability to read and understand written instructions or that involve more than superficial contact with the general public." (Tr. 24.)

Plaintiff argues the ALJ erred by failing to list the eight moderate limitations noted by Dr. Mee on the check-box portion of the MRFCA form. (ECF No. 24 at 14-15.) Plaintiff's argument fails for several reasons. First, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). This is also consistent with the Social Security Administration Program Operations Manual System (POMS) DI 25020.010(B)(1) which directs adjudicators to the narrative portion of the MRFCA form in assessing a claimant's RFC. The narrative portion of Dr. Mee's findings is a more specific expression of Dr. Mee's opinion of plaintiff's functional limitations than checked boxes on a standard form. The ALJ therefore reasonably considered Dr. Mee's opinion based on his written narrative. Second, the MRFCA form does not define the terms "moderately limited" and "markedly limited." Plaintiff asserts, "We know that moderate limitations are significant because the less restrictive category is 'Not Significantly Limited.'" (ECF. No. 24 at 14.) Plaintiff further asserts "a moderate limitation equates to a step two 'severe' impairment" and cites the regulations which define a severe impairment as an impairment that "significantly limits" the ability to perform basic work activities. (ECF No. 24 at 14.) This is fallacious reasoning which is not supported by any legal authority. By plaintiff's interpretation, any limitation identified on the MRFCA form is "significant" notwithstanding the fact that the form distinguishes between "moderate" and "marked" limitations. Plaintiff's interpretation renders the terms actually used on the form meaningless and asks the court to interpret and apply a term not actually used on the form ("significant limitation") based on a definition of that term used elsewhere. The court declines to interpret the MRFCA form in this way. The ALJ did not err in interpreting Dr. Mee's opinion.

Plaintiff's argument also suggests the ALJ erred by failing to include specific limitations identified by Dr. Mee. (ECF No. 24 at 16.) Dr. Mee found plaintiff "would benefit from not being required to work in close cooperative effort with others due to some vulnerability to distraction from others." (Tr. 364.) As defendant points out, the ALJ does not err by failing to include a physician's recommendations, as opposed to functional limitations, in the RFC assessment. *See Carmickle v. Comm'r*, 533 F.3d 1155,1165 (9th Cir. 2008) (concluding the ALJ did not err by failing to address a physician's recommendation because it was not stated as an imperative). Dr. Mee's comment that plaintiff "would benefit from" is reasonably construed as a recommendation rather than a limitation and the ALJ did not need to include it in the RFC or hypothetical.

Plaintiff also throws in a two-sentence argument asserting the ALJ erred by failing to account "for the inability to deal with supervisors" allegedly contained in the findings of Dr. Mee and Dr. Bailey. (ECF No. 24 at 24.) As discussed *supra*, the ALJ accounted for the limitations identified in Dr. Mee's narrative functional capacity assessment. Plaintiff fails to cite to the record or any authority for this argument and the court declines to further address the issue. *See id* at 1161.

**3.     Sheltered Work**

Plaintiff asserts the record is "replete with evidence" that plaintiff needs special accommodations to keep a job for longer than two to three months. (ECF No. 24 at 16-17.) Plaintiff cites a 1995 note from plaintiff's homeschool tutor indicating plaintiff "needs his tutor sitting next to him to see that his work is done and he is on task. Without close supervision, Ben has a tendency to find it hard to get back to his studies and lacks the ability to concentrate." (Tr. 240.) Ms. Bishop found plaintiff will be able perform best with supervision. (Tr. 391.) Plaintiff points to the state reviewing psychologist opinion which indicates plaintiff "will benefit from work expectations being presented clearly in addition to consequences for failure to meet expectations." (Tr. 364.) Plaintiff also points out Dr. Dougherty concluded plaintiff's prognosis is poor, his frustration tolerance is likely to be poor and he would have comprehension problems on the job, but that he should be able to carry out practical, job-related tasks that are not overly speeded. (Tr. 427.) Plaintiff's argument fails because there is no evidence that plaintiff has ever worked with special accommodations or in a sheltered workshop. None of plaintiff's past relevant work was alleged or established to be accommodated or sheltered. As a result, there is

no issue regarding special accommodations or a sheltered workshop. The evidence cited by plaintiff was considered by the ALJ in establishing the RFC. The vocational expert testified a person with the RFC described by the ALJ could perform plaintiff's past relevant work. (Tr. 59-60.)

**4.      Step 3**

Plaintiff argues he meets the listing for mental retardation under the regulations. (ECF No. 24 at 23-24.) If Plaintiff meets the listed criteria for disability, he is presumed to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The listing includes the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526; *Tackett v. Apfel*,180 F.3d 1094, 1099 (9th Cir. 1999) For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). Plaintiff bears the burden of establishing he meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). A generalized assertion of functional problems is not enough to establish disability at step three. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999.)

Plaintiff alleges he meets the listing for mental retardation under listing 12.05C. (ECF No. 24 at 24.) Subpart C under listing 12.05 provides that the required level of severity is met if plaintiff has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. § 404 Subpt. P App. 1. Plaintiff asserts findings of Ms. Bishop, a school psychologist, establish plaintiff meets listing 12.05. (ECF No. 24 at 24.) Ms. Bishop conducted a cognitive assessment in March 2009. (Tr. 385-91.) She administered the Wechsler Adult Intelligence Scale which revealed plaintiff's full scale IQ score is 63. (Tr. 387.) The ALJ addressed Ms. Bishop's finding, noting it was refuted by Dr. Dougherty's examination and testing in October 2008 which revealed a full scale IQ score of72. (Tr. 23,425.) The ALJ found Dr. Dougherty's opinion was

entitled to more weight than Ms. Bishop's opinion and the higher IQ score is more consistent with plaintiff's daily activities and work history. (Tr. 23.) The ALJ also pointed out 1997 IQ testing revealed a full scale IQ score of 96. (Tr. 23, 434, 438.) Based on this evidence, the ALJ concluded the IQ score portion of the listing is not met. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ's resolution of conflicting evidence regarding the IQ test results in the record is based on a reasonable interpretation of the evidence.

Plaintiff asserts Ms. Bishop is an acceptable medical source and that the ALJ erred by assigning more weight to Dr. Dougherty's findings. (ECF No. 24 at 23-24.) In a disability proceeding, the ALJ must consider the opinions of acceptable medical sources. 20 C.F.R. §§ 404.1527(d), 416.927(d). Acceptable medical sources include, among others, licensed physicians and psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ concluded Ms. Bishop is not an acceptable medical source and accordingly assigned less weight to her findings. (Tr. 26.) There is no evidence that Ms. Bishop is a licensed psychologist as the only credential listed on her report is "School Psychologist, ESA." A doctorate degree is not required for an ESA certificate. *See http://www.k12.wa.us/certification/ESA/Professional.aspx.* Plaintiff fails to cite the record or any legal authority or otherwise develop this argument and the court therefore declines to further address the issue. *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ did not err in assigning less weight to Ms. Bishop's opinion in part because her opinion is that of an "other source" opinion.

Plaintiff also argues a standard measure of error of plus or minus five points exists with respect to the Wechsler test scores. (ECF No. 24 at 23.) Plaintiff also asserts the WAIS-IV used by Ms. Bishop is "the current gold standard for IQ testing" as the testing conducted by Dr. Dougherty, a licensed psychologist, whose findings were based on the WAIS-III rather than the

WAIS-IV. (ECF No. 24 at 23). These arguments are not well-supported by citations to the record or other authority; however, because this case is remanded on other grounds, the ALJ should address the impact a standard measure of error may have on the results of the IQ testing and the effect, if any, of the application of different versions of the WAIS on the IQ test results. The testimony of a psychological expert may be helpful in clarifying these issues.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should reconsider the credibility finding and, if necessary, make a new residual functional capacity determination. The ALJ should also consider the implications of the use of different versions of IQ testing in determining whether plaintiff meets a listing. The testimony of a psychological expert may be helpful on remand. The court expresses no opinion as to the outcome of the ultimate disability determination on remand.

Accordingly,

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment **(Ct. Rec. 24)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.       Defendant's Motion for Summary Judgment **(Ct. Rec. 26 )** is **DENIED**.

3.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED September 18, 2013

                    S/ JAMES P. HUTTON
                    _____
                    UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14